**UNITED STATES of America**

**v.**

**James Warren THOMPSON, Appellant.**

**No. 72-1390.**

United States Court of Appeals,
District of Columbia Circuit.

Argued April 2, 1973.

Decided March 27, 1974.

Henry Lincoln Johnson, Jr., Washington, D. C., for appellant.

Frederick C. Moss, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and E. Lawrence Barcella, Jr., Asst. U. S. Attys., were on the brief, for appellee.

Before LEVENTHAL and MacKINNON, Circuit Judges, and WYZANSKI,* Senior United States District Judge for the District of Massachusetts.

---

* Sitting by designation pursuant to 28 U. S.C. § 294(d).

1. The Plan For Publication of Opinions for this court, 101 Daily Wash.L.Rep. 1977 (1973), provides for disposition of cases without published opinion where the decision involves "routine application of established principles of law to a particular set of facts." Dispositions without published opin-

LEVENTHAL, Circuit Judge:

Appellant James Thompson was convicted of possession of heroin with intent to distribute in violation of 21 U.S. C. § 841(a)(1). We affirm. In this opinion we consider appellant's contentions that evidence seized in violation of the Fourth Amendment was improperly admitted at trial and that the evidence of appellant's constructive possession of narcotics was insufficient. In accordance with this court's plan to reduce unnecessary publication,[1] we consign to an unpublished memorandum filed this date our consideration and rejection of appellant's contention that the trial judge should have recused himself.

## I. STATEMENT OF FACTS

On May 11, 1971, police officers of the Metropolitan Police Morals Division, Narcotics Branch, obtained warrants to search apartments 711 and 904 in a building at 1111 Massachusetts Avenue, N.W., Washington, D. C. The affidavits submitted in support of the warrants recited information obtained from unidentified informants to the effect that appellant Thompson kept narcotics at apartments 711 and 904, and that he had sold narcotics in apartment 711. A separate warrant authorized the search of each apartment, and the seizure of "narcotics, paraphernalia, instrumentalities, records and other contraband unlawfully held."

Officers Battle and Seymour and several other members of the Metropolitan Police Department proceeded to the Massachusetts Avenue address to execute the warrants. Battle, the officer designated to search apartment 711, knocked at the door, announced his identity, and after waiting briefly forced open the door, finding appellant Thompson and a female companion inside. During the

---

ions may be accompanied by explanatory memoranda, which though unpublished are part of the public records of the court. In this case we follow a further provision of the Plan for publication of only portions of an opinion, with the remainder contained in a memorandum accompanying the judgment. *See also*, Joinder, Limiting Publication of Judicial Opinions, 56 Judicature 195 (1972).

ensuing search Officer Battle found no narcotics but seized a .38 caliber Smith & Wesson revolver, some .32 and .38 caliber ammunition, and the following documents: a lease for apartment 711 in appellant's name; a furniture lease agreement for apartment 711 in appellant's name; three rent receipts in appellant's name; a furniture leasing account card in appellant's name; a similar account card in the name of Barbara Beecham, apartment 904; three rent receipts also in the name of Barbara Beecham, apartment 904; a television maintenance agreement in appellant's name for a portable color television, and a pamphlet explaining the characteristics of a Rossi .38 caliber revolver.

At about the same time, Officer Seymour went to apartment 904, which he found unoccupied, and proceeded to search. In a closet Officer Seymour found glassine bags of white powder, later determined to be heroin, as well as the following paraphernalia: empty glassine envelopes, nylon strainers, measuring spoons, surgical masks, and containers marked "dextrose" and "quinine." From a desk drawer Officer Seymour removed a .38 caliber Rossi revolver, an owner's manual for a Sears portable color television set, a lease for apartment 904, a furniture lease agreement, and a lease from the Allstate Furniture Leasing Corporation in the name of Barbara Beecham, listing as the address apartment 904. From a television in the apartment, Seymour removed a sticker bearing the model and serial numbers and affixed the sticker to the owner's manual.

Officer Seymour then went to apartment 711, which Officer Battle was searching, and there obtained a set of keys Battle had found on a sofa. Officer Seymour took the keys to apartment 904 and discovered that two of them fit the front door lock.

The police officers departed with the foregoing materials in their possession, together with appellant Thompson, under arrest and in custody.

The District Court denied appellant's pre-trial motion to suppress the materials seized from apartment 711. At the trial, appellant took the position that the Government's evidence failed to establish his occupancy of or control over apartment 904.

## II. MATERIAL SEIZED FROM APPELLANT'S APARTMENT WAS PROPERLY ADMITTED AS EVIDENCE

### A. Sufficiency of the affidavits.

■ The affidavits submitted by the police officers established probable cause to issue the warrants. The affidavit submitted for the warrant for apartment 711 alleged that two informants had observed appellant making sales of heroin and that a third informant had not only observed sales in apartment 711 but also had purchased heroin there using police department funds.

■ The affidavit for the warrant for apartment 904 was similar but contained the additional allegations that two informants had observed appellant remove narcotics from apartment 904 and take them to apartment 711. The affidavit also set forth the inference of the affiant that appellant was using apartment 904 as a place for storage of narcotics and added that "the affiant has found it to be a common practice for large scale narcotics drug dealers to have a second premises for the purpose of cutting and storing large quantitys [sic] of drugs."

Both affidavits satisfy the requirements, mandated by Aguilar v. Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L. Ed.2d 723 (1967) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L. Ed.2d 637 (1969), for disclosure of both the circumstances from which the informer has inferred that narcotics are present in the place to be searched, and the circumstances which support the informer's credibility.

### B. Evidence seized in appellant's apartment (#711).

The materials seized in apartment 711 were (1) the Smith & Wesson revolver and ammunition; (2) the keys which

Officer Seymour subsequently tried in the lock of apartment 904; and (3) the documents itemized above. Appellant contends that seizure of the keys and the documents exceeded the scope of the warrant.

### 1. The character of the materials justifies seizure under valid procedures.

■■ The keys and the documents constituted evidence of appellant's constructive possession of the narcotics found in apartment 904. The leases, rent receipts, and the account card that were in appellant's name tended to establish his residence at apartment 711. The rent receipts and the account card in the name of Barbara Beecham, apartment 904, and the keys found to fit the lock of apartment 904, tended to show that the resident of apartment 711 also had access to and control over apartment 904. The pamphlet describing the Rossi .38 caliber revolver also contributed to the inference of control of apartment 904, since such a firearm was found in that apartment.[2] The television maintenance agreement found in 711 was apparently intended to have a similar probative effect.[3] The foregoing items were properly seized evidentiary material, provided valid proce-

dures were followed. Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L. Ed.2d 782 (1967); F.R.Cr.P. 41(b).

### 2. Seizure of keys, leases, rent receipts, and account cards was authorized by the warrant.

■ The search warrant for apartment 711 authorized seizure of "narcotics, paraphernalia, instrumentalities, records, and other contraband unlawfully held." The skeletal language of the warrant is fleshed out by the contents of the affidavits, which established probable cause for the belief that appellant was carrying on a narcotics business utilizing two apartments and that he stored narcotics in apartment 904.

Construing the terms of the warrant in context, we believe the keys were properly seized as "instrumentalities" of the criminal enterprise in which the police had probable cause to believe appellant was engaging. Similarly, the leases, rent receipts, and account cards are fairly embraced by the authorization to seize "records." Appellant urges that the police were authorized to seize only records of narcotics transactions, but that construction of the warrant is too narrow. Although more careful drafting would have eliminated any ambiguity, we believe the warrant should be

2. The pamphlet and the Rossi revolver were introduced at trial, together with a .38 caliber Smith & Wesson revolver found in apartment 711. Appellant objected to the introduction of the firearms, claiming that they were irrelevant and prejudicial. The Government argues that the pamphlet, found in apartment 711, describing the .38 Rossi found in 904, further established appellant's connection with 904, and that introduction of the Smith & Wesson revolver found in 711 was necessary to negate the inference that the pamphlet described a gun which appellant kept in 711. While the introduction of the firearms perhaps constituted prosecutorial overkill in view of the other evidence connecting appellant to apartment 904, we would not find error in the admission of this kind of evidence. Our ruling must, however, take into account that the guns became relevant only when linked to the pamphlet describing the Rossi .38, and that we have not decided the validity of the seizure of the

pamphlet itself. We conclude, however, that the admission of the pamphlet and the guns to bolster the inference of appellant's control over apartment 904 was, if erroneous, harmless error (infra n. 8).

3. The maintenance agreement issued by Sears, Roebuck & Co. described the product covered as a "color portable TV, model number 4188." The owner's manual from apartment 904 describes a Sears portable color television, and the sticker affixed to the manual bears the model number "528.-41880000" with the digits "41880" underscored. Appellant's brief concedes (p. 28) that the police found a "service contract on a color television which was found in . . . apartment [904]." Under the circumstances we conclude that the maintenance agreement was seizable material, though as we note below, infra, n.8, it is unnecessary to decide whether the seizure itself was lawful.

read more broadly, as authorizing the seizure of all records establishing and confirming the operation of the narcotics business and appellant's control of the two locations at which it was alleged to be carried on.

■■ We have previously construed the terms of a warrant by reference to the underlying circumstances disclosed in the accompanying affidavit. Moore v. United States, 149 U.S.App.D.C. 150, 461 F.2d 1236 (1972).[4] That course is appropriate here, with a warrant whose terms are sparse[5] even when measured against the requirement that only the "generic class" of items to be seized must be described. See James v. United States, 416 F.2d 467, 473 (5th Cir. 1969), cert. denied, 397 U.S. 907, 90 S.

Ct. 902, 25 L.Ed.2d 87 (1970). Our construction of the term "records" in light of the circumstances averts any attempt to use the naked word as an authorization to seize documents of any kind, thus raising the specter of a "general warrant." See Stanford v. Texas, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965). Our construction limits the term to documents having a commercial character,[6] and we therefore do not reach any assertion of a broader police authority to rummage, read, and remove, applicable to all private papers.

■ Appellant's control over apartment 904 being shown by the foregoing tangible items and other evidence,[7] we see no basis for reversal,[8] and the judgment is

Affirmed.

4. In *Moore* we held that language of the warrant could be narrowed by reference to the affidavit provided that the affidavit accompanies the warrant and is incorporated by reference therein, and we further noted that the requirement of incorporation would be satisfied by the common practice of the United States Magistrates for the District of Columbia of requiring annexation of the affidavit to the warrant and delivery of both documents at the premises searched. 149 U.S.App.D.C. at 154 n.6, 461 F.2d at 1240 n.6. It is not clear from this record whether the affidavit for apartment 711 was delivered to appellant at the time of the search, and there is the additional fact that neither the warrant nor affidavit for apartment 904 was given to him. We adhere to our view that the requirements of *Moore* represent sound practice. In this case, in which the crucial events occurred well before *Moore*, both affidavits, submitted simultaneously to the magistrate, were made by a member of the search detail and carried to the scene of the search. The circumstances do not embody the dangers we sought to avoid by the requirements announced in *Moore*, and we conclude construction of the warrant in light of the affidavits is appropriate.

5. Compare, *e.g.*, the warrants described in United States v. James, *supra*, and United States v. Honore, 450 F.2d 31 (9th Cir. 1971), cert. denied, 404 U.S. 1048, 92 S.Ct. 728, 30 L.Ed.2d 740 (1972).

6. *See* Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 1016 (1927). *See also* United States v. Scharfman, 448 F.2d 1352 (2d Cir. 1971), cert. denied, 405 U.S. 919, 92 S.Ct. 944, 30 L.Ed.2d 789 (1972).

7. There was testimony by one Kathleen Cichonski that appellant had entertained her alone in apartment 904 on several occasions, and testimony that latent fingerprints taken from apartment 904 matched those of appellant. The foregoing testimony and the tangible evidence described above plainly suffice to support a jury's inference that appellant constructively possessed the narcotics and paraphernalia found in apartment 904.

8. We need not decide whether the other objects seized from apartment 711—the pamphlet describing the .38 caliber Rossi reolver and the television maintenance agreement—came within the scope of the warrant or whether their seizure is alternatively supportable under the doctrine that allows police to seize obviously incriminating objects in "plain view" encountered inadvertently in the course of a lawful intrusion. *See* Coolidge v. New Hampshire, 403 U.S. 443, 466–468, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

While the police may have been aware when they departed from the building that the two objects were material evidence tending to connect appellant with apartment 904, the lack of clarity in the record would require a remand to make this determination. We see no need to undertake such an inquiry, since any error in the admission of these objects was harmless. Their impact was cumulative with that of the other physical evidence and testimony that ended to show appellant's control over apartment 904. Admission of the pamphlet allowed the further introduction of the firearms. While there are overtones of prejudice from any evidentiary use of firearms, they do not rise to reversible error here.