**UNITED STATES of America**

v.

**Eddie Lee ANDERSON a/k/a Fast Eddie.**

**No. CR 85–167.**

United States District Court, District of Columbia.

Oct. 2, 1985.

Ted Shmanda, Asst. U.S. Atty., Washington, D.C., for plaintiff.

William J. Garber, Charles F. Stow III, Washington, D.C., for defendant.

## OPINION

JOHN GARRETT PENN, District Judge.

The defendant is charged in a twenty-nine count indictment with violations of the Mann Act (18 U.S.C. § 2421), interstate transportation of minors for the purpose of prostitution (18 U.S.C. § 2423), inducing a female to engage in prostitution, (22 D.C. Code § 2705), and obstructing justice (18 U.S.C. § 1503). The case is now before the Court on the defendant's motion to suppress evidence. At issue are two search warrants, one issued by a judge of the

Superior Court for the State of New Jersey on December 7, 1984, and the other issued by a United States Magistrate for the United States District Court for the District of Nevada on February 1, 1985.

I

The underlying facts are as follows: Agents of the Federal Bureau of Investigation (FBI) and officers of the Metropolitan Police Department for the District of Columbia, undertook an investigation to determine whether the defendant is transporting females, including juveniles, in interstate commerce for purposes of prostitution. On or about December 7, 1984, Detective Joseph Haggerty of the Metropolitan Police Department, who was the officer in charge of the investigation, spoke with several women who advised him that the defendant had transported them across state lines for the purpose of prostitution. They further advised Haggerty that the defendant owned at least one condominium in Atlantic City, New Jersey, where he kept bank books, diaries of travel and other evidence of travel, receipts, photograph albums, and photographs of women involved in prostitution for the defendant. The above property was said to be located at 535 East Harding Highway, Apartment 5F, Mays Landing, New Jersey. Based upon this information Detective Haggerty and other officers secured a search warrant, from the United States District Court for the District of New Jersey, to search the above-described property. The warrant was signed by a federal judge on December 7, 1984, and when the officers went to execute the warrant they were advised that the defendant had moved his household goods to Las Vegas, Nevada one week before. The warrant was not served.

Upon returning to the office of the Atlantic City Police, the officers were advised by a reliable source that the defendant had moved to the Village Motel, Room 224, approximately one week before. The source also advised the officers that the defendant had moved numerous photo albums, clothes and a large amount of personal property into the motel room. Based upon this information, the officers went to a judge of the Superior Court for the State of New Jersey and sought a search warrant for Room 224 of the Village Motel located at 168 S. Kentucky Ave., Atlantic City, New Jersey.

The affidavit used in support of the application for the search warrant was a form affidavit, apparently similar to those regularly used in support of applications for search warrants in the State of New Jersey. The officers typed in the description and location of the motel. The warrant form contains a space for the description of the premises to be searched, but apparently has no space to insert a description of the property which is the subject of the search. The form merely states that, "there has been and now is located *certain property* obtained in violation of the penal laws of *this state* or *any other state;* or ... which has been used in connection with the violations of the penal laws of *this state* or *any other state;* or constituting evidence of or tending to show any such violation, in violation of New Jersey statutes of" (emphasis this Court's). At this point, the officers inserted, "2 C: 34–1(b)5 Purposely and knowingly transporting (a) person(s) (into) (within) *this state* for the purpose of engaging in sexual activities for hire" (emphasis this Court's). The form affidavit then provides "the facts tending to establish the grounds for this application and the probable cause of my belief that such grounds exist are as follows:". Here, the affiant noted that he had participated along with a Metropolitan Police Detective from Washington, D.C. and Special Agents from the FBI, Atlantic City Office, in an attempt to serve a federal search warrant on the premises located at 535 East Harding Highway, Mays Landing, New Jersey. He further states that "subsequent to serving the warrant it was determined that the occupants of the apartment had moved out approximately a week previous. The warrant was not served." The affiant then went on to state that upon returning to the Special Operations Office of the Atlantic City Police, he learned from a reliable source that

the target of the "federal grand jury investigation" (the defendant) had moved into the Village Motel "approximately a week ago". "The source stated it saw the subject Eddie Lee Anderson, a/k/a Fast Eddie moving numerous photo albums, clothes and a large amount of personal property into Room 224." The affiant then included in the affidavit a statement that, "[t]he Federal Search Warrant was seeking bank books, diaries of travel and other evidence of travel, receipts, photograph albums and photographs of women involved in interstate prostitution, and proceeds of interstate prostitution including Atlantic City, New Jersey". The affiant then went on to make a reference to the federal search warrant and the officers' prior conversations with women who had been involved in prostitution for the defendant. The affiant described himself as Detective John Imfeld who has been a member of the Atlantic City Police Department for the past six years and who has been assigned to special operations for the past six months. He then states "[d]uring the last nine months I have been involved in conducting prostitution investigations and arrests which led me to interview several informants and defendants all of whom have been personally involved in prostitution activities". Although the affidavit in support of the state search warrant makes reference to the federal search warrant, it does not explicitly incorporate that warrant and it does not incorporate the affidavit made in support of that federal warrant. However, Officer Haggerty testified that he was present when the warrant was presented to the Superior Court Judge and that at that time the officers also presented to the judge the affidavit which had been presented to the federal court in support of the federal search warrant executed on the same date.

Based upon the affidavit presented in support of the application for a search warrant, a Superior Court judge for the State of New Jersey signed the warrant and authorized that "the premises known as 168 S. Kentucky Ave., Atlantic City, N.J., commonly referred to as the Village Motel, Room #224, occupied by a black male named Eddie Anderson" may be searched. The warrant notes that "there has been and now is located certain property used as a means of committing a misdemeanor in violation of the laws of the State of New Jersey to wit: Interstate transportation of persons for the purpose of prostitution, 2C:34–1(b)5.". The form warrant then provides that the officers are commanded to enter and search the above premises "for the above-described items and other associated paraphernalia". Nowhere in the warrant is there any description of the property to be seized. The warrant was signed on December 7, 1984 at 7:30 p.m. and provides that the warrant may be executed within 10 days "between the hours of 7:30 p.m. and 6:00 a.m.".

The defendant argues that the evidence seized pursuant to the warrant should be suppressed because the search warrant was executed at night and was authorized for execution between the hours of 7:30 p.m. and 6:00 a.m., that although the search warrant purports to be a state search warrant it was issued for the purpose of seizing evidence for use in connection with a federal prosecution and it was neither issued nor executed in conformity with federal law. *See* Fed.R.Crim.P. 41(a). Defendant argues that the application in support of the search warrant refers to the federal grand jury investigation and does not refer to violations of state law as being the object of the application. Defendant further argues that the search warrant is facially deficient in that it fails to particularize the things to be seized and that the executing officers could not reasonably presume that the warrant was valid and that what occurred in the case was that the seizure was conducted in such a manner that the discretion of the officer dictated what was to be seized since there are no guidelines in the search warrant itself.

## II

The defendant first argues that the warrant is invalid because, although it was signed by a state court judge, it is a federal search warrant and that it does not comply

with the applicable federal rule. *See* Fed. R.Crim.P. 41. He contends that it is a federal warrant because it was requested as the result of a federal investigation, a fact evident from the references to the "federal grand jury" and the "Federal Search Warrant" contained in the affidavit executed in support of the warrant.

■ Rule 41(a) provides that a federal search warrant may be issued by a "federal magistrate or a judge of a state court of record ... upon the request of a federal law enforcement officer or an attorney for the government". Regardless of whether the warrant was executed by a federal judge or magistrate or an appropriate state court judge, it must be executed in conformity with the requirements of the federal rule. In such cases, the warrant must set forth facts establishing that a federal crime is involved. *See United States v. Krawiec,* 627 F.2d 577, 580 (1st Cir.1980); *United States v. Brouillette,* 478 F.2d 1171, 1177 (5th Cir.1973).

■ Moreover, the warrant must provide that it is to be served in the daytime, "unless the issuing authority, by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at times other than day time". Fed.R. Crim.P. 41(c)(1). Neither the warrant nor the affidavit in support thereof sets forth any grounds for permitting the warrant to be executed other than in the daytime. Indeed, the federal warrant issued the same date authorizes only a daytime search, and nothing in the affidavit supporting the federal warrant suggests that there is reasonable cause to execute the warrant at night. The Court can only assume then that the officers requested the state judge to allow them to execute the warrant immediately upon his signing the warrant based upon the fact that the warrant was signed on December 7, 1984 at 7:30 p.m., that they were authorized to conduct a search only between the hours of *7:30 p.m.* and 6:00 a.m., and, that the search took place that same evening. *See* Defendant's Motion to Suppress Evidence, Affidavit of Roger Young in support of search warrant, ¶ 2(j).

It seems clear then that the warrant was not signed in conformity with Rule 41 and that, if this is a federal warrant, the motion to suppress must be granted. In fact, however, the warrant is not federal warrant. The affidavit in support of the state warrant reflects that the application was made for a search for evidence relating to a violation of state law, specifically, "2C–34–1(b)(5) purposely and knowingly transportating (a) person(s) (into) (within) [New Jersey] for the purpose of engaging in sexual activities for hire". If the warrant was issued pursuant to state law, it need only meet the requirements of the Constitution of the United States, and it is not necessary that it be in conformity with Rule 41. The fact that the property seized might be used in a federal prosecution, or that it is ultimately used only in a federal prosecution, is not dispositive of the issue. *See United States v. Krawiec, supra; United States v. Sellers,* 483 F.2d 37, (5th Cir.1973).

Here, there is no basis for this Court to conclude that the New Jersey officers did not intend to prosecute the defendant in New Jersey for a violation of that state's law. In support of his application for a warrant, the affiant recited that a state law was purportedly violated. The affiant is a state officer assigned to conduct investigations of prostitution in Atlantic City, New Jersey. The Court concludes that the warrant in question is a state warrant and that there is no necessity that it comply with the requirements of Rule 41.

The defendant cites the Court to *United States v. Massey,* 687 F.2d 1348 (10th Cir. 1982). The facts in *Massey* differ from those in this case because the warrants there, while issued by a state judge, were issued on federal warrant forms. The affidavits supporting those warrants alleged that the property seized constituted evidence of violations of *federal* law. Moreover, the warrants were initialed by an Assistant U.S. Attorney and were executed by a federal agent.

### III

The fact that the warrant was a state warrant is not dispositive of the issue be-

fore the Court, since the defendant argues that the warrant is a general warrant in that it does not particularize the things to be seized.

██ Nowhere on the face of the warrant is it stated what is to be seized. All that the warrant does is to note that there are grounds to believe that a state law has been violated. In the printed form it provides that the officers may search the premises "for the above-described items and other assorted paraphernelia", but as noted above, there is no reference in the warrant itself to those items. If the warrant must be limited to that language, then it appears that it amounts to nothing more than a general warrant which would allow the officers to seize any property without specific direction, unless the Court may properly refer to the supporting affidavit and find within the affidavit a description of the property to be seized. Normally, however, the Court will only refer to the affidavit when the affidavit accompanies the warrant *and* the warrant uses words of reference which incorporate the affidavit as a part of the warrant. *See United States v. Hillyard,* 677 F.2d 1336, 1340 (9th Cir.1982); *United States v. Womack,* 166 U.S.App.D.C. 35, 49, 509 F.2d 368, 382 (1974); *United States v. Thompson,* 161 U.S.App.D.C. 339, 344, n. 4, 495 F.2d 165, 170 n. 4 (1974); *Moore v. United States,* 149 U.S.App.D.C. 150, 152, 461 F.2d 1236, 1238 (1972). The present warrant cannot be saved by reference to the above cases, however, because the warrant makes no reference to the affidavit and there is no evidence that the affidavit accompanied the warrant.

██ Based upon the above, it appears that the warrant is invalid. The affidavit establishes that there was probable cause to issue the warrant. To be sure, the warrant is far from being faultless; it does not incorporate the affidavit signed in support of the federal warrant nor does it set forth the facts in the same detail as is found in the federal affidavit, but it does set forth sufficient facts for the judge to find probable cause. It sets forth that the defendant is suspected of transportating females for the purposes of prostitution, that the defendant recently moved to the motel, that the source saw the defendant move "numerous photo albums, clothes and a large amount of personal property into Room 224", that the officers are seeking "bank books, diaries of travel and other evidence of travel, receipts, photograph albums and photographs of women involved in interstate prostitution, and proceeds of interstate prostitution including Atlantic City, New Jersey", and that the application for the warrant, as well as the application made in support of a federal search warrant, are based upon "statements and interviews conducted by both Atlantic City police and Metropolitan Police in Washington, D.C. on four prostitutes who had previously prostituted themselves for Eddie Lee Anderson". Moreover, Detective Haggerty testified that at the time the state court judge signed the warrant, he also had before him the affidavit submitted to the federal court in support of the federal search warrant. Notwithstanding those facts, however, the warrant is invalid because it does not identify the property to be seized and therefore is a general warrant.

### IV.

Recently, the Supreme Court has had occasion to decide that the exclusionary rule should not be applied when the officer conducting the search acted in "objectively reasonable reliance" on a warrant issued by a detached and neutral magistrate that subsequently is determined to be invalid. *United States v. Leon,* —— U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). *See also Massachusetts v. Sheppard,* —— U.S. ——, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984). The Court now considers whether, under the facts of the instant case, the exclusionary rule should be applied.

In *Sheppard,* the police were investigating a homicide which occurred on Saturday, May 5, 1979. During the course of that investigation, the officers received information which led them to focus their investigation on Sheppard and they concluded

that it would be advisable to obtain a search warrant to search Sheppard's house. The affidavit prepared in support of the warrant set forth the items the officers sought to seize. Because it was by then Sunday, the officers had difficulty in finding an appropriate warrant application, and when they finally located one, it was a warrant designed for the search and seizure of controlled substances. Although the officers and the issuing judge attempted to modify the form warrant, everyone omitted changing that part of the warrant which authorized a search for "controlled substances". 104 S.Ct. at 3427, n. 2. The items the officers sought to find were located in the defendant's house. Those items were introduced at trial and Sheppard was eventually found guilty of murder. The trial court and a majority of the justices on the Supreme Judicial Court for Massachusetts found that the warrant was constitutionally defective "because the description in the warrant was completely inaccurate and the warrant did not incorporate the description contained in the affidavit". 104 S.Ct. at 3428, n. 5. The state court found, however, that the officers believed that the warrant authorized the search that they conducted and that there was an objectively reasonable basis for the officers mistaken belief. 104 S.Ct. at 3428–29. The Supreme Court affirmed, noting that "a reasonable police officer would have concluded, [as did the officers in Sheppard] that the warrant authorized a search for the materials outlined in the affidavit". 104 S.Ct. at 3429. The Supreme Court also noted that the officers executing the warrant knew before hand what was to be seized, and thus, that the case differed from one where an officer who was not involved in the application stage is called upon to execute the warrant and must therefore look to the warrant to determine what is to be seized. 104 S.Ct. at 3429 n. 6.

This Court can find little or no distinction between the facts in Sheppard and those in this case. Here, Detective Haggerty had been involved in a lengthy investigation concerning the defendant's alleged illegal activities. Sometime on or about December 7, 1984, Haggerty ascertained that the defendant occupied the premises located in Mays Landing, New Jersey, and, he sought and obtained a search warrant for those premises. In attempting to execute the warrant, the officers were advised that the defendant had transferred the items the officers sought to Las Vegas, Nevada. The warrant was not served. Later that same day, new information came to the attention of the officers and it was based upon this information that they sought and obtained the now invalid state search warrant.

While the warrant in Sheppard authorized the officers to search for "controlled substances", items having nothing to do with what the officers were actually seeking; the warrant here authorized the officers to seize items related to the interstate transportation of persons for the purpose of prostitution, which, of course, is what the officers were seeking to find. While the affidavit was not incorporated by the warrant, it is undisputed that the officers knew exactly what they were looking for since they had prepared two separate requests to search for such items in the same day. Thus, although the warrant was a general warrant based upon its language, it seems clear that there was no doubt in the minds of the officers what they were entitled to seize. Additional evidence of this fact is found by referring to the inventory of the items actually seized pursuant to the warrant. Those items correspond with the items referred to in both the applications signed in support of the federal warrant and the state warrant.

Like the officers in Sheppard, the officers here took every step which reasonably could have been expected of them. They prepared an affidavit, and together with the warrant presented it to a detached and neutral judge. They also took along and presented to the judge the affidavit prepared in support of the federal warrant. When the judge signed the warrant authorizing the search, the officers had the right to conclude that the warrant authorized a search for the materials described in the

supporting affidavit. As was true in *Sheppard*, here, the same officers who sought and obtained the warrant, executed the warrant. Thus, this is not the case of an officer who was less familiar with or unfamiliar with the application stage. *See* 104 S.Ct. at 3429 n. 6.

Certainly these officers had less notice as to the possible defect in the warrant than the officers in *Sheppard*. In *Sheppard*, the officers' notice of the defect in warrant was weighed against the fact that they brought that matter to the attention of the issuing judge and he advised them that the warrant was valid. Here, there was no such obvious defect in the warrant so the fact that the officers did not discuss this problem with the issuing judge does not really distinguish this case from *Sheppard*. What is clear is the fact that they presented the necessary documents to the judge, and in addition thereto, the affidavit submitted in support of the federal warrant. When the judge authorized the search, these officers were free to rely upon that action and execute the warrant.

Nothing in the present record suggests that the officer sought the warrant in anything other than good faith. The affidavit, although not a model for establishing probable cause, was sufficient for that purpose, and there is no reason to believe that the officers thought otherwise. Based upon all of the above factors, the Court finds that the officers had "an objectively reasonable basis for [their] mistaken belief". 104 S.Ct. at 3428–29. The Court concludes that the exclusionary rule should not be applied to the facts in this case.

The issue presented in this case, and cases like this one, present difficult questions and may possibly suggest to some that judges issuing search warrants may become less diligent simply because, if they are wrong, all the officers must do is to state that they had a reasonable belief that the search was authorized. Possibly, some may argue that all the officer need do is to "touch base" with the magistrate, and once the warrant is signed, rely on that action. No doubt, as we sail this uncharted sea, there will be many unseen shoals, but each case must be judged on its own facts. On the facts of this case, the Court concludes that the motion to suppress the New Jersey search warrant must be denied.

### V

■ The defendant also seeks to suppress any evidence received as the result of the search warrant executed in the District of Nevada. The defendant contends that that warrant also violates the federal proscription against general warrants and that a reading of the affidavit as a whole does not establish a fair probability that contraband or evidence of crime would be found at the place where the warrant was directed under the facts stated in the affidavit. The Court finds that contention without merit.

The affidavit prepared in support of the warrant issued by the federal magistrate in Nevada consists of five pages detailing Detective Haggerty's investigation and referring to the seizure made on December 7, 1984, in New Jersey. Moreover, the warrant executed by the magistrate specifically describes the property to be seized including "concealed photographs, photo albums, evidence of travel, micro-cassettes, a brief case, address books, cash and jewlery, which are the fruits, instrumentalities and/or evidence of one or more violations of Title 18, United States Code, Sections 2421 and 2423, and Title 23, D.C.Code, Section 2705". Moreover, so much of the defendant's motion as seeks to suppress the Nevada warrant based upon the alleged defective New Jersey warrant, which is referred to in the application in support of the Nevada warrant, is without merit in view of this Court's ruling in Part IV, *supra*.

The Court finds no merit to the defendant's motion to suppress the Nevada warrant and accordingly, so much of the motion as is addressed to that warrant is denied.

An appropriate order has been issued.