**UNITED STATES of America,**

v.

**Michael MITCHELL, aka Mikey, Defendant.**

**Crim. A. No. 91–518 (CRR).**

United States District Court, District of Columbia.

June 5, 1992.

Jay B. Stephens, U.S. Atty. for the District of Columbia and Asst. U.S. Atty. William E. Lawler, III, Washington, D.C., for the U.S.

A.J. Kramer, Federal Public Defender for the District of Columbia, Reita Pendry, and Allen E. Burns, Asst. Federal Public Defenders, Washington, D.C., for defendant.

CHARLES R. RICHEY, District Judge.

Before the Court is the defendant's Motion for a New Trial, based upon a claim of ineffective assistance of his trial counsel. The defendant was tried before this Court on November 25 and 26, 1991 on a two-count indictment charging him with distributing more than five grams of cocaine base, and with distributing the same within one thousand feet of a school. The jury convicted him of both counts. Before sentencing, the Court received a letter from the defendant in which he expressed dissatisfaction with the quality of the representation he received from his trial counsel. *See* Order filed February 6, 1992, Exhibit. The Court appointed the Federal Public Defender to enter its appearance and investigate the matter, and on March 12, 1992, the Court granted trial counsel's motion for leave to withdraw. Through the Federal Public Defender, the defendant subsequently filed the instant motion, and the

Court held a hearing on the matter on May 18, 1992.

After careful consideration of the submissions of the parties, the transcript of the trial and exhibits, the testimony of witnesses at the hearing, the arguments of counsel, and the entire record herein, the Court concludes that the defendant's motion must be denied. Even if there were deficiencies in trial counsel's performance, they did not prejudice the outcome of the defendant's case or deprive him of a fair trial.

## I. *Background*

According to the testimony at trial, the defendant sold cocaine base to undercover police officer Cheryl Tillman within one thousand feet of Shaw Junior High School in the District of Columbia on April 12, 1990. The defendant was not arrested for the crime until August 24, 1991, over sixteen months later.

The defendant retained trial counsel to replace court-appointed counsel on November 15, 1991, ten days before trial.[1] Prior counsel, David Smith, learned that the defendant intended to retain other counsel on November 19 and 20, 1992. Mr. Smith spoke with trial counsel by telephone on November 20, and agreed to meet him on November 22, 1991 to transfer the file to him. Trial counsel was unable to keep his appointment with Mr. Smith, so Mr. Smith had the file delivered to trial counsel at the Superior Court. Mr. Smith and his partner, Gregory English, were notified by the Court that they would be required to be prepared to try the case on November 25, 1991 on a contingency basis. Accordingly, Mr. English (who took over for Mr. Smith with the consent of the Court) prepared for trial and appeared on the morning of trial. On the morning of November 25, 1991, Mr. English and trial counsel discussed inconsistencies in the chemist's report of the examination of the drugs at issue. Upon representation from trial counsel that he

was prepared for trial, the Court allowed prior counsel to withdraw and trial began.

According to both trial counsel and the defendant, trial counsel met with the defendant twice at the District of Columbia jail and once in the courthouse lock-up before trial. Trial counsel estimates that in preparing the case he spent approximately one and one half hours meeting with the defendant. He also spoke with the government attorney handling the case and received documentation from him. He reviewed the discovery materials and discussed them with the defendant. He went to the scene of the incident and paced the distance from the scene to Shaw Junior High School, to ensure that the scene was within one thousand feet of a school, as charged in the indictment. Trial counsel reviewed the chemist's report of the drug analysis, and noted missing information. Based on conversations with his client, trial counsel believed that while the defendant had witnessed a narcotics sale, he had not participated in it. Trial counsel decided that his primary strategy would be to argue that this was a case of mistaken identity; that the defendant was not the person who sold the drugs to the undercover officer. As a "secondary" strategy, he would attack the chain of custody through discrepancies in the chemist's report.

## II. *Analysis*

Under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), there is a two-part test for determining whether there is a claim for ineffective assistance of counsel: (1) counsel's performance must be deficient, to the extent that he or she made errors so serious that counsel was not functioning as the "counsel" guaranteed under the 6th Amendment; (2) the deficient performance must have prejudiced the defense, such that it deprived the defendant of a fair trial, whose result is reliable. *Id.* at 687, 104 S.Ct. at 2064. The "ultimate focus" of the entire inquiry is the "fundamental fairness" of the trial, and whether there has

---

1. Trial counsel did not have notes in his file recording the date he was retained. He did have business cards, which he used as receipts which reflected that the first payment from the defendant's family was made to him on November 15, 1991.

been a breakdown of the adversarial process that renders the result unreliable. *Id.* at 696, 104 S.Ct. at 2069. If the defendant makes an insufficient showing on one part of the test, the court should deny the ineffective assistance claim without reaching the other part of the test. *Id.* at 697, 104 S.Ct. at 2069.

To determine if counsel's performance was constitutionally deficient, the inquiry is whether counsel's assistance was reasonable considering all the circumstances. Conduct should be evaluated from counsel's perspective at the time and on the facts of the particular case. *Id.* at 689, 104 S.Ct. at 2065. A court must indulge a "strong presumption" that the conduct falls "within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065. Strategic decisions "made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690–91, 104 S.Ct. at 2065–67. However, strategic choices after incomplete investigation are only reasonable to the extent reasonable professional judgment supports the limits on the investigation. *Id.*

To determine whether counsel's actions prejudiced the defense, the inquiry is whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Id.* at 694, 104 S.Ct. at 2068.

The defendant alleges essentially four major areas in which he contends that trial counsel's assistance was ineffective. His claims focus upon: (a) allegedly inadequate pretrial preparation and investigation; (b) failure to cross-examine the police officers as to certain matters; (c) failure to cross-examine the chemist and emphasize questions about the chain of custody of the drugs; (d) failure to object to certain aspects of the opinion testimony of Officer David Stroud. The Court shall address these arguments in turn.

A. Pretrial Preparation and Investigation

■ Failure to investigate and prepare the case can amount to ineffective assistance. "Only when reasonable investigation has been performed is counsel in a position to make informed tactical decisions. It is especially important that counsel adequately investigate the case in order that at the least he can provide minimally competent professional representation." *U.S. v. Barbour*, 813 F.2d 1232, 1234 (D.C.Cir. 1987). *See also Osborn v. Shillinger*, 861 F.2d 612, 627 (10th Cir.1988) (inadequate preparation and failure to investigate other potential defenses ineffective assistance).

The evidence reveals that trial counsel had three meetings with the defendant, had discussions with the Assistant United States Attorney handling the case, requested and received documentation, and reviewed the file and discovery materials for the case. Prior counsel, Mr. Smith, testified that a relatively small portion of his work in the case involved preparing for trial; most of his work involved pretrial matters such as negotiating with government counsel and litigating his client's bond status. He stated that the facts of the case were relatively simple, requiring little trial preparation.

Under these circumstances, the Court finds that trial counsel's pretrial preparation and investigation were adequate, falling within the "wide range of reasonable professional assistance." *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Trial counsel took over the case in its late stages, when trial preparation was the primary responsibility. As Mr. Mitchell's prior counsel acknowledged, the facts of the case were relatively simple, lessening the need for extensive pretrial preparation. Trial counsel demonstrated at the hearing that he has broad-ranging practical knowledge of the criminal justice system and its operation in the real world. Thus he has the ability to make tactical decisions more quickly and efficiently than other attorneys who may not have had his experience. While trial counsel might have done more to prepare his case, his performance was

more than minimally sufficient to satisfy the constitutional requirements of the Sixth Amendment. Moreover, the Court is aware of no alleged deficiencies in preparation that prejudiced the defendant.

### B. Cross–Examination of the Police Officers

█ The drug transaction upon which Mr. Mitchell's prosecution was based occurred on April 12, 1990. The defendant was not arrested until August 24, 1991, over sixteen months later. The defendant told his trial counsel that while he was present at a drug transaction, he did not participate in it. Based on this representation and the sixteen month time lag between the transaction and the arrest, trial counsel decided that his primary defense strategy would be to suggest to the jury that the police arrested the wrong person.

The government's proof of the identity of the defendant rested on the testimony of Officer Cheryl Tillman, the undercover police officer involved in this case, and on the testimony of Investigator Dale Sutherland, who supervised the transaction. Officer Tillman testified that the defendant sold her narcotics on April 12, 1990. Tr. 31–33. Investigator Sutherland described his oversight of the sale. Tr. 45–51.

Trial counsel for the defendant did not cross-examine Officer Tillman as to how she identified the defendant. He did, however, ask Investigator Sutherland how, at the time of the arrest, the police identified the defendant as the person who allegedly made the sale. Tr. 54. Counsel for the government requested a bench conference, at which he announced that for Investigator Sutherland to fully respond to the question, he would mention "other narcotics activity that the defendant was involved in but not charged with in this case". *Id.* Defense counsel stated that his understanding had been that the identification had been made through a police photograph, but government counsel denied this assertion. Tr. 55. Based on this representation, defense trial counsel did not pursue the inquiry as to the mode of identification.

The defendant argues that his trial counsel gave up too easily in cross-examining Officer Tillman and Investigator Sutherland on the issue of identification. He contends that Investigator Sutherland's affidavit in support of his application for an arrest warrant indicates that the undercover officer identified him both from a police department photograph and as someone she had previously met while working undercover. Def. Mot. Ex. E. Defendant asserts that trial counsel should have asked at trial why a photograph was necessary if Officer Tillman already met the defendant.

Similarly, defendant argues that he told trial counsel that he believed that he was arrested only because he refused to cooperate with the police, and that trial counsel should have brought this issue out during the cross-examination of Investigator Sutherland, the officer who tried to enlist the defendant's cooperation. Defendant contends that this information could have cast doubt in the jury's mind as to Officer Sutherland's veracity and the reliability of the charges.

At the hearing, trial counsel defended his decision not to inquire further into the way Mr. Mitchell was identified and the issue of cooperation. He explained that he was concerned that if he inquired as to how Mr. Mitchell was identified, Officer Tillman would testify that she had seen the defendant engage in other narcotics activity on other occasions. Such testimony would have been extremely prejudicial to the defendant. He also feared that Officer Sutherland would offer similar incriminating testimony.

Trial counsel also explained his decision not to inquire into the issue of whether the defendant's failure to cooperate was the reason he was arrested. He testified that he did not inquire because he understood that the defendant admitted selling the drugs at issue in his case to several officers who sought his cooperation, and feared that if he opened the door to the issue of cooperation, he would invite this testimony.

Defendant argues that trial counsel should not have simply relied upon the

government's assertions that testimony as to the defendant's alleged admissions or involvement in other narcotics activity would be introduced if there were questioning on the identification and cooperation issues. Rather, defendant now argues, trial counsel could have challenged the admissibility of such evidence through motions in limine, or could have conducted a voir dire of the witnesses outside of the presence of the jury. Trial counsel responds that he did not wish to take these measures because, for tactical reasons, he did not want the Court to be aware of the alleged statements.

The Court finds that trial counsel made reasonable tactical decisions in declining to inquire into the issues of cooperation and identification, and in declining to pursue motions in limine or voir dires of the witnesses. His concern with evoking damaging testimony was well-founded, as Officer Sutherland's testimony at the motions hearing indicated. Officer Sutherland stated that the defendant had admitted selling the drugs on several occasions. Moreover, it is unlikely that a motion in limine to suppress statements made to the police would have been successful. Based on the testimony of Investigator Sutherland, it appears that any incriminatory statements the defendant may have made were either spontaneous or made after *Miranda* warnings were given.[2] As to the possibility of conducting a *voir dire* of the witnesses outside the presence of the jury, the Court finds that counsel made a reasonable tactical decision that the possible benefits of such a procedure were outweighed by the possible harm of having the Court hear testimony that

the motions hearing demonstrated would have been extremely prejudicial.

### C. Failure to Cross–Examine Chemist

■ Defendant alleges that trial counsel's assistance was ineffective because he did not cross-examine the chemist who analyzed the drugs retrieved by the police in this case as to facts which called into question the chain of custody of the drugs.

Before trial, former counsel David Smith had been provided with a copy of the chemist's report of the analysis of the drugs, (the "DEA–7" report). Based on his copy, he identified several deficiencies in the form with which he planned to attack the chain of custody of the drugs as a defense in this case. Trial counsel was also aware of these problems and adopted an attack of the chain of custody as his secondary defense theory. Upon examination of the original DEA–7 at trial, most of these apparent problems were resolved as attributable to an imperfect copy of the document. The evidence presented at the hearing confirms that there were no significant irregularities on the DEA–7 form itself. However, there was a question as to the quantity of drugs. According to the field test of the drugs done at the time of the sale, the weight was approximately thirty grams, including the plastic bag in which they were packaged. Yet when the chemist weighed the drugs in September, 1991, seventeen months later, the weight of the drugs, excluding the packaging, was only 19.33 grams. Hearing Ex. G. The packaging weighed only 1.22 grams (not nearly enough to explain the difference in measured weight of more than ten grams). *Id.*

---

**2.** This conclusion is based upon the testimony of Investigator Sutherland at the motions hearing. He stated that he visited Mr. Mitchell at his home in August of 1991 and asked him to come to the police station to talk about a police investigation of another matter (in which Mr. Mitchell was not a suspect). However, on the way to the station, Investigator Sutherland informed the defendant that the real purpose of the meeting was that the police desired his cooperation. He informed the defendant that the police had evidence of the drug sale at issue in this case. Although he told the defendant that he was free to leave, he also gave the defendant his *Miranda* warnings. *See Miranda v. Arizona,*

384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The defendant then admitted selling the drugs. While the defendant disputes that the *Miranda* warnings were given, the Court has made a finding of fact that Investigator Sutherland is more credible than the defendant on this point. Investigator Sutherland also described later incidents in which the defendant, without interrogation, voluntarily acknowledged his sale of the narcotics at issue in this case. Such voluntary statements implicate neither *Miranda* nor the Constitution. *See Miranda* at 477–78, 86 S.Ct. at 1629–30; *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

The defendant contends that trial counsel should have cross-examined the chemist about this weight discrepancy and used it to call the chain of custody of the drugs into question.

While arguably trial counsel should have questioned the chemist as to the weight discrepancy and emphasized the fact that the weight of the packaging could not explain it, the omission was not prejudicial under the *Strickland* standard. The chemist was asked about the weight discrepancy at the motions hearing. He noted that there could be several explanations, including dehydration and the decomposition of substances mixed with the cocaine base. He stated that it was difficult to determine the cause of the weight differential with any certainty. The defendant asserts that counsel should have called an opinion witness to challenge any explanation the chemist offered for the weight discrepancy. However, the chemist's testimony at the hearing suggests that no opinion witness could have testified conclusively as to the cause of the discrepancy. Thus such testimony would have been unlikely to substantially assist the defendant.

Even if the issue of the weight disparity had been exhaustively litigated, with the actual weight of the bag emphasized and a defense opinion witness presented, this Court seriously doubts it would have been dispositive to the jury in light of all of the other evidence on chain of custody offered by the government. *See, e.g.* Tr. 67–71 (opinion witness testimony as to the standard police procedures for ensuring chain of custody, including the use of heat-sealed envelopes, lock boxes, and secured transportation and storage). The Court also notes that trial counsel did argue the chain of custody issue, and the weight discrepancy, to the jury in his closing argument. Tr. 90–91. Although the argument might have

been stronger if he had pointed out the actual weight of the drug packaging, trial counsel did argue that the weight of the "little, tiny bag, very thin plastic bag" could not explain the discrepancy. *See* Tr. 90–91.[3] Thus trial counsel raised the major issue for the jury's consideration, and there is no "reasonable probability" that the result would have been different merely by the addition of one supporting fact. *See Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

### D.  Testimony of Officer Stroud

■ Finally, the defendant contends that trial counsel failed to adequately contest certain testimony of Officer David Stroud, the government's opinion witness. Specifically, the government asked Officer Stroud why it was important to protect the identity of informants. Tr. 74. Officer Stroud responded that it is important to protect the identity of informants because "if you reveal the informant to the people who you're trying to arrest or the organization you're trying to infiltrate, *it could result in serious harm to that informant, and maybe it will do serious harm to the officer, too*". Tr. 74 (emphasis added). Trial counsel did not object to the question or the testimony. Later, the prosecution asked whether delaying the arrest would protect the informant and undercover officer. Trial counsel did not object to this question, but the Court overruled the objection. Tr. 76. Officer Stroud then testified that a delay between the sale and the arrest could protect the informant and undercover officer because it will prevent the suspect from knowing who identified him, *"because, likely, he's sold to thousands of people in the meantime"*. Tr. 76 (emphasis added). Trial counsel did not renew his

---

**3.**  Despite the fact that prior counsel had requested discovery, including all *Brady* material well in advance of trial, the government failed to provide a copy of the report which indicated the weight of the packaging until the morning of trial. The defendant contends that trial counsel's failure to ensure receipt of the documentation before then, and failure to examine it carefully enough on the morning of trial (to note that the weight discrepancy was not explained by the packaging) in and of itself amounted to ineffective assistance. However, since the Court finds that trial counsel's failure to bring the weight of the packaging to the jury's attention was not prejudicial, it also finds that any failure in preparation on the issue of the weight of the packaging was not prejudicial.

objection, move to strike, or request a mistrial.

The Court of Appeals has recognized that opinion witness testimony as to the common practices in narcotics operations is commonly admitted to assist jurors to evaluate testimony and evidence. However, this testimony must be scrutinized when it becomes "potentially harmful", because of the inherent danger of such testimony causing undue bias on the part of the jury through " 'its aura of special reliability and trust[worthiness].' " *United States v. Doe,* 903 F.2d 16, 20 (D.C.Cir.1990) (quoting *United States v. Anderson,* 851 F.2d 384, 393 (D.C.Cir.), *cert. denied,* 488 U.S. 1012, 109 S.Ct. 801, 102 L.Ed.2d 792 (1989). *See also United States v. Castillo,* 924 F.2d 1227, 1231–1235 (2nd Cir.1991) (noting that opinion witness testimony on operations of narcotics dealers should be circumscribed to occasions where the subject matter of testimony is unfamiliar to jurors).

Defendant claims trial counsel erred by failing to object to the first statement or to request a mistrial, and he erred by failing to renew his objection after the second statement was made or to request a mistrial. Defendant argues the statements were unnecessary and highly prejudicial, implying, gratuitously, that the defendant sold drugs to thousands of people and was the type of person likely to do violence to informants. As to the first statement, the Court agrees that the better course would have been for trial counsel to object. However, the Court does not believe that Officer Stroud's testimony that revealing the identity of an informant could cause an informant harm was unduly prejudicial to the defendant. The testimony was relevant because the identity of the informant was not produced at trial, and the informant was not produced as a witness at trial. The government was entitled to provide an explanation for this absence, to ensure that the jury did not draw unwarranted inferences against the government from the failure of the informant to testify. Moreover, the testimony was relevant to the issue of why there was a delay between the sale and arrest of the defendant, because according to the government one reason for the delay was to protect the identity of the informant. The possible prejudicial effect of this testimony did not outweigh its probative value. *See* Fed.R.Evid. 403. Therefore, even if trial counsel had objected or requested a mistrial, the Court would have allowed the testimony.

As to the second statement, trial counsel did object to the underlying question and thereby preserved the issue for appeal. This was sufficient to constitute competent representation. Even if the better decision would have been to request the mistrial upon hearing Officer Stroud's allusion to "thousands" of drug deals, this Court would not have been inclined to grant it. The statement was relevant to the issues in the case, and the Court does not believe that the jury would have been unduly influenced by the statement alone.

The Court did not refer to Officer Stroud as an "expert". This Court believes that using the term "expert" may encourage a jury to give the witness' testimony more weight than it is fairly entitled to receive. Although Rules 702 and 703 of the Federal Rules of Evidence do not preclude the use of the term "expert", the rules make clear that the purpose of the testimony is to allow a witness with specialized knowledge to state an opinion. The Court believes that referring to the witness as an "opinion witness" explains the purpose of the testimony to the jury in a manner more consonant with the interests of justice as prescribed in Fed.R.Crim.P. 2, and accordingly the Court referred to Officer Stroud simply as an "opinion witness".

Moreover, the Court gave the jury a limiting instruction as to how it should consider the testimony of opinion witnesses and police officers in its final jury instructions, and alerted the jury to these instructions at the time Officer Stroud testified. *See* Tr. 66. The jury instructions provided in relevant part:

Please note that the rules of evidence ordinarily do not permit witnesses to testify as to their opinions or conclusions. Two exceptions to this rule exist. The first exception allows an ordinary citizen

to give his or her opinion as to matters that he or she observed or of which he or she has first-hand knowledge. The second exception allows witnesses who, by education, training and experience, have acquired a certain expertise in some art, science, profession or calling, to state an opinion as to relevant and material matters.

The purpose of opinion witness testimony is to assist you in understanding the evidence and deciding the facts in this case. In weighing this testimony, you may consider the opinion witness' qualifications, opinions, reasons for testifying, as well as all other considerations that ordinarily apply when you are deciding how to evaluate a witness' testimony. You should give the opinion testimony such weight as you think it fairly deserves and consider it in light of all the evidence in this case. As I have already told you, it is your responsibility to decide the facts in this case by the return of your unanimous Verdict in accordance with these Instructions.

The testimony of a law enforcement official or police officer should be considered by you just as any other evidence in the case, and in evaluating his or her credibility you should use the same guidelines which you apply to the testimony of any witness. In no event should you give either greater or lesser credence to the testimony of any witness merely because he or she is, or was, a law enforcement official.

Jury Instructions, filed November 26, 1991 at 10–11.

Considering all of these safeguards that were in place to ensure that the jury did not give the testimony of Officer Stroud undue weight, a mistrial would not have been appropriate. The Court's limiting final jury instructions and careful avoidance of the term "expert" dispelled any possible prejudice Officer Stroud's statement might have aroused. Therefore, the failure to request a mistrial did not prejudice the defendant's case.

Thus, while the defendant has suggested a number of ways that, in hindsight, trial counsel might have better presented this case, he has failed to show that any alleged deficiencies were prejudicial to the outcome. The defendant had a fair trial. The major questions raised by the facts were brought to the jury's attention in a competent manner. Even if trial counsel employed all of the tactics that the defendant, through present counsel, now advocates, there is no reasonable probability that the outcome would have been different. *Strickland, supra,* 466 U.S. at 694, 104 S.Ct. at 2068. Accordingly, the defendant's motion for a new trial based upon the ineffective assistance of counsel must be denied.

### III. *Motion to Vacate Count One*

In the alternative, the defendant has asked this Court to vacate his conviction for distribution of five grams or more of cocaine base in Count One, arguing that it is a lesser included offense of Count Two, distribution of cocaine base within one thousand feet of a school. *See United States v. Williams,* 782 F.Supp. 7 (D.D.C. 1992). The government has no objection to this motion. The Court shall grant the motion for the reasons set forth in *Williams, supra.*

### IV. *Conclusion*

Accordingly, for the reasons previously stated herein, the Court shall deny the defendant's Motion for New Trial, but shall grant his Motion to Vacate Count One of the Indictment.

The Court is particularly grateful for the thorough and able assistance of the Federal Public Defender's Office for researching and ventilating all of the factual issues relevant to the instant motion. The attorneys handled themselves professionally and literally left no stone unturned. However, as the Supreme Court stated in *Strickland,* the ultimate focus of the inquiry must be on the "fundamental fairness" of the trial being challenged. 466 U.S. at 696, 104 S.Ct. at 2069. Upon careful consideration and reflection of all of the defendant's claims, the Court must necessarily conclude that this defendant received a fair trial, his

rights were not impaired, and his conviction must be upheld.

### ORDER

For all of the reasons set forth in the Court's Opinion in the above-captioned action, filed on this date, it is, by the Court, this 5th day of June, 1992,

ORDERED that the defendant's Motion for New Trial shall be, and hereby is, DENIED; and it is

FURTHER ORDERED that the defendant's Motion to Vacate the Conviction under Count One of the Indictment shall be, and hereby is, GRANTED.