22 F.3d 1185
 306 U.S.App.D.C. 103
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America, Appellee,
v.
Michael MITCHELL, a/k/a "Mikey", Appellant.
 No. 92-3219.
 United States Court of Appeals, District of Columbia Circuit.
 March 14, 1994.
 
 Before: WALD, HENDERSON and RANDOLPH, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause came to be heard on appeal of the defendant from the judgment of the District Court, and it was briefed and argued by counsel. The issues have been accorded full consideration by the Court and occasion no need for a published opinion. See D.C.Cir.Rule 36(b). For the reasons stated in the accompanying Memorandum, it is
 
 
 2
 ORDERED AND ADJUDGED, by the Court, that this case be affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely-filed petition for rehearing. See D.C.Cir.Rule 41.
 
 MEMORANDUM
 
 4
 Michael Mitchell was convicted after a jury trial of one count of unlawful distribution of cocaine (Count One) and one count of unlawful distribution of cocaine within 1,000 feet of a school (Count Two). Subsequently, Mitchell filed a motion for a new trial, alleging ineffective assistance of counsel. The district court denied the motion. See United States v. Mitchell, 796 F.Supp. 13 (D.D.C.1992). Mitchell challenges both the conviction and the district court's order denying a new trial on the grounds that the combination of ineffective assistance of counsel, prosecutorial misconduct, and judicial error deprived him of a fair trial. Because we agree with the government that any flaws in the trial were not prejudicial to Mitchell, we affirm the conviction.
 
 
 5
 According to the testimony at trial, on April 12, 1990, Mitchell sold cocaine base to undercover officer Cheryl Tillman within 1,000 feet of Shaw Junior High School in the District of Columbia. Investigator Dale Sutherland, who supervised the transaction, later stipulated that when the drugs were field tested, they weighed approximately 30 grams with their packaging. After field testing, the drugs were heat-sealed in an envelope and placed in a series of locked vaults. Nonetheless, when the Drug Enforcement Agency ("DEA") chemist, Steven Demchuk, weighed the drugs seventeen months after the initial transaction, they weighed only 19.33 grams without their packaging. Although Demchuk's notes demonstrate that the packaging weighed only 1.22 grams, this fact was not noticed until the motions hearing after trial. Thus there was an approximately 9.45 gram discrepancy between the weight of the drugs sold to Tillman and the weight of the drugs examined by Demchuk, and an almost 11 gram discrepancy if the weight of the packaging is not taken into account.
 
 
 6
 At the heart of this case is Mitchell's contention that the performance of his trial counsel, Charles Stow, was constitutionally deficient. In particular, Mitchell points to four examples of Stow's allegedly ineffective assistance: (1) inadequate pretrial preparation and investigation; (2) failure to cross-examine Tillman and Sutherland about both their ability to identify Mitchell during the drug transaction and the possibility that Mitchell was only arrested for refusing to cooperate with the police; (3) failure to cross-examine the DEA chemist; and (4) failure to object to testimony by Officer David Stroud, the government's opinion witness, regarding standard procedures for protecting informants. The government responds that Stow's assistance was reasonable under the circumstances (he was retained ten days prior to trial) and that, even if there were deficiencies, they did not prejudice Mitchell. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984).
 
 
 7
 As to the first two areas of alleged incompetence, we agree with the district court's conclusion that Stow acted reasonably. See generally Mitchell, 796. F.Supp. at 16-18. First, Stow's pretrial preparation and investigation were adequate, especially considering the relatively simple facts of this case. Stow met with Mitchell three times before trial, talked to the Assistant United States Attorney handling the case, requested and received documentation, reviewed the file and discovery materials, visited the crime scene, and measured the distance from the site of the drug transaction to the nearby school. Second, Stow's decision not to cross-examine Tillman and Sutherland could well be justified as sound trial strategy under the circumstances. Stow was concerned by government assertions that the officers' testimony would reveal that they had observed Mitchell participating in other drug transactions and that he had admitted to selling the drugs at issue in this case. While we note that Stow could have reduced the potential of prejudicial testimony from the officers with either motions in limine or voir dire conducted outside of the presence of the jury, we conclude that his decision not to cross-examine the officers was an exercise of "reasonable professional judgment." Strickland, 466 U.S. at 690.
 
 
 8
 We are more troubled by Stow's decision not to cross-examine the DEA chemist about the weight discrepancy between the drugs sold to Tillman and the drugs examined by Demchuk. At the root of this decision was Stow's failure to press the government to turn over the chemist's notes prior to trial. Mitchell's prior counsel, David Smith, had already filed a Brady request for the notes. See Brady v. Maryland, 373 U.S. 83 (1963). Had Stow pursued the Brady request more vigorously, or even read the notes carefully the morning of trial, he would have known that the packaging weighed only 1.22 grams and thus could not account for the almost 11 gram weight discrepancy. Such information might have prompted Stow to elicit testimony from Demchuk confirming that the packaging alone could not explain the different weights and thus brought the chain of custody into question. It also would have precluded the prosecution from misleading the jury by stating in rebuttal that the entire weight discrepancy was attributable to the packaging.
 
 
 9
 Nevertheless, we agree with the district court that Mitchell was not prejudiced by Stow's failure to elicit definitive testimony from Demchuk on the weight of the packaging. Stow did point out during his closing argument that the "little, tiny bag, very thin plastic bag" could not account for the almost 11 gram discrepancy, Trial Transcript ("Tr.") II at 90-91 (Nov. 26, 1991), and he may have wanted to avoid any chance that Demchuk's testimony would have provided an innocent explanation for the discrepancy. While the evidence that the packaging weighed only 1.22 grams would have strengthened the defense's case, the jury was on notice that the discrepancy arguably could not be explained away by the weight of a flimsy plastic bag. Moreover, the defense pointed to no other evidence that the drugs examined by Demchuk were not the same ones purchased from Mitchell, and there was testimony that the drugs were placed in a heat-sealed envelope and a series of locked vaults. We find it unlikely that the jury would have reached a different verdict had they known the exact weight of the packaging.
 
 
 10
 Mitchell also contends that the government violated Brady by failing to turn the chemist's notes over to the defense until the morning of trial, almost two weeks after Smith had hand-delivered his Brady request. The chemist was the first witness to testify, and therefore Stow had little or no opportunity to review the notes prior to the time for cross-examination, especially as some of the notes were handwritten and also might have been difficult for a non-expert to understand. We doubt, however, that the chemist's notes qualify as the type of exculpatory material that must be handed over pursuant to Brady. In contrast to an exculpatory admission of guilt by a co-defendant that only the prosecution knows about, chemist's notes in a case involving drugs are the type of evidence that the defense counsel is aware of well in advance of trial. Defense counsel can obtain access to such notes through discovery and thus there is no danger of it being hidden from the jury, either innocently or intentionally. Moreover, even if the chemist's notes were Brady material, we are confident that, had the government handed over the chemist's notes earlier, there is still no reasonable probability that the jury would have reached a different result. See United States v. Bagley, 473 U.S. 667, 682 (1985); United States v. Tarantino, 846 F.2d 1384, 1417 (D.C.Cir.), cert. denied, 488 U.S. 867 (1988).
 
 
 11
 Mitchell's final example of Stow's alleged ineffectiveness stems from Stow's failure to object adequately to certain testimony by Officer David Stroud, the government's opinion witness. Stow left untouched Stroud's statement that one reason for protecting an informant's identity is that revealing her identity "could result in serious harm to that informant, and maybe it will do serious harm to the [undercover] officer, too." Tr. II at 74 (Nov. 26, 1991). Soon thereafter, the prosecutor asked whether delaying the arrest of a suspect would protect the informant and the police officer. The district court overruled Stow's objection to this question, and Stroud testified that a delay would be protective "because, likely, [the suspect]'s sold to thousands of people in the meantime," Tr. II at 76 (Nov. 26, 1991), and thus probably would not remember who betrayed him. The district court found that even if Stow had objected to the first statement, it would have allowed the testimony. As to the second statement, Stow did object. We agree with the district court that Stow's failure to object to Stroud's testimony does not rise to the level of ineffective assistance of counsel. Therefore, taking all the allegations of ineffective assistance of counsel as a whole, we conclude that there is no "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Mitchell was not denied a fair trial.
 
 
 12
 Mitchell also urges us to find that the district court's admission of Stroud's opinion testimony constituted plain error. The district court defended its admission of the testimony by finding Stroud's statements relevant to the government's explanation of the absence of the informant at trial and the pre-arrest delay (Mitchell was arrested on August 24, 1991, more than sixteen months after the underlying drug transaction took place). See Mitchell, 796 F.Supp. at 20. Mitchell disputes the relevancy of the testimony, emphasizing that Stow did not challenge the informant's absence and that the government presented no evidence that protection of the informant and the undercover officer was a reason for the pre-arrest delay between mid-May, 1990, and August 24, 1991.[1] We agree with the district court's finding that Stroud's testimony was not unduly prejudicial. See id. (citing FED.R.EVID. 403). Although the testimony might have been interpreted to imply that Mitchell was a dangerous person who has engaged in thousands of drug deals, Stroud never specifically mentioned Mitchell, and he explicitly testified that he was not familiar with the drug transaction at issue in this case. Tr. II at 79-80 (Nov. 26, 1991). Given the weight of the evidence against Mitchell, we cannot find that Stroud's testimony " 'could have independently affected the jury's verdict' so as to warrant reversal." United States v. Lancaster, 968 F.2d 1250, 1255 (D.C.Cir.1992) (quoting United States v. Anderson, 851 F.2d 384, 393-94 (D.C.Cir.1988), cert. denied, 488 U.S. 1012 (1989)).
 
 
 13
 Finally, we reject Mitchell's claim that the district court erred by deciding not to depart downward from the sentencing range recommended by the Federal Sentencing Guidelines due to the "mitigating circumstance" of the allegedly low purity of the cocaine (51%). See U.S.S.G. Sec. 5K2.0 (1993). Mitchell has not demonstrated that the decision not to depart downward constituted either a mistake of law or an incorrect application of the Guidelines. See 18 U.S.C. Sec. 3742(a) (1988); see also United States v. Sherod, 960 F.2d 1075, 1078 (D.C.Cir.), cert. denied, 113 S.Ct. 480 (1992).
 
 
 14
 For the reasons stated above, we affirm the conviction. We assume that, pursuant to its statement of intent at sentencing, the district court will now vacate the conviction on Count One, unlawful distribution of more than five grams of cocaine base, because it is a lesser included offense of Count Two, unlawful distribution of more than five grams of cocaine base within 1,000 feet of a school.
 
 
 
 [1]
 Although Officer Sutherland testified at trial that an immediate arrest of Mitchell would have jeopardized the anonymity of the informant and the undercover officer, Tr. I at 57-58 (Nov. 25, 1991), he never explained why Mitchell was not arrested as planned in mid-May, 1990, one month after the transaction. See Appendix at 280 (stipulating that Sutherland planned to arrest Mitchell in May, 1990)